# United States Court of Appeals
For the Eleventh Circuit

No. 07-13648

District Court Docket No.
05-00119-CR-FTM-29-DNF

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
May 28, 2008
THOMAS K. KAHN
CLERK

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CARLOS ANDRES GONZALEZ,
a.k.a. Andy,
FIDEL GONZALEZ,

Defendants-Appellants.

A True Copy - Attested
Clerk U.S. Court of Appeals,
Eleventh Circuit

By: _____
Deputy Clerk
Atlanta, Georgia

Appeals from the United States District Court
for the Middle District of Florida

## JUDGMENT

It is hereby ordered, adjudged, and decreed that the attached opinion included herein by reference, is entered as the judgment of this Court.

Entered: May 28, 2008
For the Court: Thomas K. Kahn, Clerk
By: Gilman, Nancy

ISSUED AS MANDATE
AUG 1 2 2008
U.S. COURT OF APPEALS
ATLANTA, GA.

[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
May 28, 2008
THOMAS K. KAHN
CLERK

No. 07-13648
Non-Argument Calendar

D. C. Docket No. 05-00119-CR-FTM-29-DNF

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CARLOS ANDRES GONZALEZ,
a.k.a. Andy,
FIDEL GONZALEZ,

Defendants-Appellants.

Appeals from the United States District Court
for the Middle District of Florida

(May 28, 2008)

Before CARNES, BARKETT and PRYOR, Circuit Judges.

PER CURIAM:

Carlos Gonzalez appeals his convictions for conspiracy to distribute more than 1000 marijuana plants, 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(viii), 846, and possession with intent to distribute 100 or more marijuana plants, 21 U.S.C. § 841(a)(1), (b)(1)(B)(vii), and Fidel Gonzalez appeals his conviction and sentence for conspiracy to distribute more than 1000 marijuana plants, 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(viii), 846. Fidel and Carlos each challenge evidentiary rulings. Fidel also argues that there was a material variance between his indictment and the evidence at trial, insufficient evidence to support his conviction, and a sentencing error. We affirm.

## I. BACKGROUND

Fidel and Carlos were involved in the cultivation, distribution, and sale of marijuana. Carlos lived in Miami with Gilberto Perez. Carlos trained Perez about the cultivation of marijuana plants and introduced Perez to Fidel. Perez harvested three crops, each containing 50 to 60 marijuana plants. Fidel and Carlos paid Perez based on the amount that Perez produced and retained "the balance" of the profits. Fidel and Carlos transported the marijuana to New York in 30-pound increments.

Perez later received money from Carlos and Fidel to purchase two homes in Homestead. Fidel helped convert the homes into greenhouses, and Fidel and Carlos delivered marijuana plants to the two locations. Perez and Carlos's father,

Jose Hernandez, cultivated the plants and harvested three crops totaling 120 plants. Hernandez also assisted other growers in harvesting ten additional crops, three of which involved a total of 152 plants.

Perez introduced Carlos to Osvaldo Alonso, who later performed electrical work and installed air conditioning in the marijuana greenhouses. Alonso purchased a house in Homestead that Fidel helped convert into a greenhouse in which Alonso harvested two crops totaling 132 marijuana plants. Fidel, who observed the first harvest and took possession of the crop, divided the profit with Alonso. With profits from the first house, Alonso purchased a second home, where he harvested two additional crops totaling 132 marijuana plants. Fidel and Carlos took possession of the marijuana, and Carlos paid Alonso for the crops.

In the meantime, Carlos recruited Ignacio Carbajal in Miami and introduced him to Fidel. Carbajal purchased a home that Fidel and Carlos helped him to convert into a marijuana greenhouse. Carbajal harvested two crops totaling 108 plants and divided the profits with Carlos. Fidel transported Carbajal to assist others periodically to harvest their marijuana crops.

Carbajal introduced Carlos to his cousin, Ernesto Castillo, who cultivated the marijuana in Carbajal's Miami home and helped harvest marijuana at two other Miami greenhouses. At one harvest, Castillo saw Fidel and Carlos overseeing the

operation. When Castillo inquired when he would paid for the harvests, Carbajal and his father told Castillo that Fidel controlled the money in the marijuana operation.

After several crops were stolen from the Miami homes, Carlos and Fidel moved their operations to Cape Coral, where they continued to provide money for individuals in the marijuana network to purchase and convert homes into marijuana greenhouses. The Gonzalezes assisted Perez to purchase a home that Perez used to harvest 14 marijuana plants. Carlos provided Carbajal with money to purchase one Cape Coral home, in which he harvested three crops totaling 76 plants. Carlos then assisted Carbajal to purchase a second home, where Carbajal harvested 21 plants. Carlos helped Carbajal's father purchase a home in which Fidel helped to harvest 15 to 17 plants. Carlos also opened his home to Jose Pena Pupo, whom Carlos paid to harvest between 115 and 120 plants.

Carlos recruited Armando Garcia in Cape Coral and used Alonso to convert Garcia's house into a marijuana greenhouse. Garcia harvested between 40 and 50 marijuana plants, after which Carlos collected the substance and paid Garcia 24,000 dollars. Garcia thereafter assisted others to harvest four or five crops.

Carlos also recruited his uncle, Carlos Hernandez, to participate in two harvests totaling 124 plants. Fidel visited Hernandez on one occasion to observe

the marijuana. Perez and Carbajal also visited Hernandez to advise him about growing marijuana.

After Ernesto Castillo was arrested in Carbajal's home, Fidel and Carlos provided Castillo with money to hire an attorney. Castillo eventually agreed to assist law enforcement to discover marijuana greenhouses in Miami. Castillo later expressed an interest in assisting authorities in Cape Coral. Castillo identified four homes that he had helped convert into greenhouses. Authorities placed a global positioning tracker on Carbajal's vehicle and tracked the vehicle to several other homes in Cape Coral.

Based on information accumulated during the investigation, Cape Coral officers and Drug Enforcement Administration agents executed warrants on seven homes visited by Carbajal and seized 691 marijuana plants. Although neither Fidel nor Carlos was arrested, their names were discovered in the contact lists of seized cellular telephones, and several individuals, including Armando Garcia, were taken into custody. When the authorities searched Garcia's house, they discovered a photograph of Carlos standing in what appeared to be a room of marijuana plants. Authorities later arrested Gilberto Perez and Osvaldo Alonso, and they agreed to cooperate in the investigation.

Fidel and Carlos were indicted for conspiracy to distribute more than 1000

marijuana plants, 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(viii), 846, and possession with intent to distribute 100 or more marijuana plants, 21 U.S.C. § 841(a)(1), (b)(1)(B)(vii). Before trial, Carlos filed a motion in limine to exclude the photograph seized from Garcia's house. The district court withheld a ruling until after the government laid a foundation for the evidence.

At trial, Gilberto Perez, Jose Hernandez, Armando Garcia, Osvaldo Alonso, Carlos Hernandez, Ignacio Carbajal, Jose Pupo, and Ernesto Castillo testified about their participation in the cultivation and harvesting of marijuana and their interaction with Fidel and Carlos. Jose Hernandez testified that Fidel "controlled the money" in the marijuana operation. Garcia testified that the photograph seized from his home depicted Carlos standing among marijuana "plants that look like the ones that I had in my house."

On cross-examination, Castillo denied that he had told police that Carbajal led the marijuana operation in Cape Coral. The government continued this line of inquiry on redirect examination and asked Castillo to name the leader of the marijuana organization, to which Castillo answered that he did not know. The government then asked Castillo who he "believed" was the leader of the organization. Fidel objected and argued that the question had been "asked and answered" and that Castillo's opinion was "irrelevant." The district court

6

overruled the objections, and Castillo answered that the leader was "[p]ossibly Fidel."

The jury found Fidel guilty of conspiracy to distribute more than 1000 marijuana plants. The jury found Carlos guilty of both the conspiracy crime and possession with intent to distribute more than 100 marijuana plants. The jury also made specific findings about the quantity of marijuana involved in Fidel's and Carlos's crimes.

Before sentencing, Fidel objected to the presentence investigation report and argued that, because he was acquitted on the possession charge, the marijuana seized in Cape Coral should not be included in the calculation of his sentence. Fidel also objected to his base offense level. Fidel reasserted these objections at sentencing. The district court overruled the objections and stated that the jury found beyond a reasonable doubt that Fidel was guilty of a conspiracy that involved more than 1000 marijuana plants. The district court sentenced both Fidel and Carlos to 120 months of imprisonment and five years of supervised release.

## II. STANDARD OF REVIEW

We apply four standards of review in this appeal. We review evidentiary rulings for an abuse of discretion. United States v. Kennard, 472 F.3d 851, 854 (11th Cir. 2006), cert. denied, 127 S. Ct. 3004 (2007). We review de novo

challenges to the sufficiency of the evidence and view the evidence in the light most favorable to the government. United States v. Futrell, 209 F.3d 1286, 1288 (11th Cir. 2000). We also review de novo the application of the sentencing guidelines and examine related findings of fact for clear error. United States v. Humber, 255 F.3d 1308, 1311 (11th Cir. 2001). Objections or arguments that are not raised in the district court are reviewed for plain error. United States v. Edouard, 485 F.3d 1324, 1343 (11th Cir. 2007); United States v. Evans, 478 F.3d 1332, 1338 (11th Cir.), cert. denied, 128 S. Ct. 257 (2007); United States v. Dennis, 237 F.3d 1295, 1300 (11th Cir. 2001); United States v. Harness, 180 F.3d 1232, 1234 (11th Cir. 1999).

## III. DISCUSSION

Carlos and Fidel Gonzalez raise five separate issues for our consideration. All fail. We address each argument in turn.

*A. The Photograph of Carlos Gonzalez Was Admissible.*

Carlos argues that the district court erroneously admitted into evidence a photograph that depicted him surrounded by marijuana plants. He contends that the government did not authenticate the photograph and it was unduly prejudicial. We disagree.

The district court did not abuse its broad discretion by admitting the

8

photograph into evidence. Testimony from Armando Garcia that Carlos was featured in the photograph and standing among what appeared to be marijuana plants provided sufficient information to authenticate the photograph. See Fed. R. Evid. 901(a), (b)(1). Garcia's lack of knowledge about the photographer and the date of the photograph did not affect its admissibility. See United States v. Clayton, 643 F.2d 1071, 1074 (5th Cir. Unit B 1981). The probative value of the photograph outweighed any prejudice created by its admission because it provided physical evidence of Carlos's involvement in the marijuana conspiracy and his actual possession of marijuana. See United States v. Tinoco, 304 F.3d 1088, 1120 (11th Cir. 2002).

*B. Testimony Regarding Fidel's Leadership Was Admissible.*

Fidel argues, for the first time on appeal, that the district court should have excluded testimony from Ernesto Castillo that Fidel was "possibly" the leader of the conspiracy because the government did not establish that Castillo possessed firsthand knowledge of the matter. This argument fails. Castillo testified that he "knew" Fidel and Carlos, he observed them at a marijuana harvest, he received money from Fidel and Carlos to hire a defense attorney, and his cousin told him that Fidel controlled payment of workers in the marijuana harvesting business. See Fed. R. Evid. 602. Based on Castillo's cumulative knowledge about the

conspiracy, the admission of Castillo's testimony did not prejudice Fidel's substantial rights. See United States v. Moriarty, 429 F.3d 1012, 1019 (11th Cir. 2005).

### C. There Was No Variance Between Fidel's Indictment and the Evidence Introduced At Trial.

We review an argument of material variance viewing the evidence in the light most favorable to the government to determine whether a reasonable trier of fact could have found that a single conspiracy existed beyond a reasonable doubt. United States v. Castro, 89 F.3d 1443, 1450 (11th Cir. 1996). When an argument of material variance is raised for the first time on appeal, we review for plain error. United States v. Dennis, 237 F.3d 1295, 1300 (11th Cir. 2001). To be reversible error, the facts proved at trial must materially differ from the facts alleged in the indictment and the defendant must suffer substantial prejudice as a result. United States v. Weissman, 899 F.2d 1111, 1114 (11th Cir. 1990).

Fidel's argument that a material variance existed fails. The government introduced evidence that was consistent with the conspiracy charged in Fidel's indictment. Fidel and Carlos were charged with "knowingly and willfully combin[ing], conspir[ing], confederat[ing] and agree[ing] with each other and with other persons . . . to possess with intent to distribute more than one thousand (1000) marijuana plants" beginning in "September 2001, through and including

May 17, 2005." Testimony presented by numerous government witnesses established that Fidel and Carlos acted jointly to recruit and assist individuals to purchase and convert houses in Homestead, Miami, and Cape Coral into indoor marijuana greenhouses, to cultivate and harvest over 1000 marijuana plants, and to sell the marijuana.

*D. Sufficient Evidence Supports Fidel's Conviction.*

Fidel argues, for the first time on appeal, that there was insufficient evidence to prove he conspired to distribute more than 1000 marijuana plants, but this argument fails. When a defendant fails to move for a judgment of acquittal, we will affirm his conviction unless "the evidence on a key element of the offense is so tenuous that a conviction would be shocking." United States v. Bischel, 156 F.3d 1148, 1150 (11th Cir. 1998). Testimony from Gilberto Perez, Jose Hernandez, Osvaldo Alonso, Carlos Hernandez, and Ignacio Carbajal established that Fidel assisted in the cultivation of over 1000 marijuana plants in homes located in Homestead, Miami, and Cape Coral.

*E. Fidel Was Correctly Sentenced For Conspiring to Distribute
More Than 1000 Marijuana Plants.*

Fidel argues that his sentence was improperly enhanced for his involvement with more than 1000 marijuana plants because witnesses did not distinguish marijuana seedlings from marijuana plants. His argument fails. Testimony

supports the finding by the jury that Fidel conspired to distribute more than 1000 marijuana plants.

## IV. CONCLUSION

The convictions of Carlos Gonzalez and the conviction and sentence of Fidel Gonzalez are **AFFIRMED.**

A True Copy - Attested
Clerk U.S. Court of Appeals,
Eleventh Circuit

By: _____
Deputy Clerk
Atlanta, Georgia